## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | )        Case No. 3:24-mj-1277 |
| | ) |
| SAJJU KHATIWADA | ) |

### MEMORANDUM  OPINION

A detention hearing was held in this case on November 15, 2024, in accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, to determine under 18 U.S.C. § 3142(f) whether there are conditions of release that will reasonably assure the appearance of the defendant as required and/or the safety of any other person and the community.[1] The defendant Sajju Khatiwada ("Khatiwada") appeared with his counsel, attorney William Newman. Assistant U.S. Attorney Kathryn Booth appeared for the United States (the "government"). For the reasons detailed below, the government's motion for detention (Docket No. 11) is **DENIED**.

### I.        PROCEDURAL AND FACTUAL BACKGROUND

Khatiwada is charged in  a criminal complaint, filed on November 8, 2024, with one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of money laundering in violation of 18 U.S.C. § 1957. (Docket No. 3.)[2]  The complaint is based on the sworn statement of FBI Special Agent Joy Wright, whose investigative responsibilities include primarily financial crimes.

---

[1] As discussed below, a preliminary hearing was also scheduled for November 15, 2024, but the defendant, through counsel, waived his right to a preliminary hearing in open court on that date.

[2] The complaint was originally sealed at the government's request.  (Docket Nos. 1 and 2.) Upon the government's motion, the rest of the case was unsealed, but the complaint remains sealed. (Docket Nos. 5 and 6.)  A redacted complaint was filed.  (Docket No. 7.)

Khatiwada was arrested on November 9, 2024 and his initial appearance was held on November 12, 2024 (Docket Nos. 8, 9), at which Khatiwada was represented by retained counsel.

The government moved for a detention hearing on the grounds that Khatiwada is a serious flight risk under 18 U.S.C. § 3142(f)(2)(A) and for his detention pending trial based on risk of non-appearance under 18 U.S.C. § 3142(e)(1) and (g). (Docket No. 11.) The Court scheduled a preliminary and detention hearing for November 15, 2024. At the November 15 hearing, Khatiwada, through counsel, waived his right to a preliminary hearing. Waiver of a preliminary hearing establishes probable cause for allegations in the complaint. *United States v. Snead*, Criminal No. 20-32, 2020 WL 4187774, at *2 (W.D. Penn. July 21, 2020).

The complaint[3] alleges that, from approximately August 2020 until April 2024, Khatiwada engaged in a scheme to defraud his former employer, Bridgestone Americas Inc. ("Bridgestone"), of approximately $15 million. Bridgestone is the North American subsidiary of Bridgestone Corporation, which is the world's largest tire and rubber and tire company. Bridgestone's corporate headquarters is located in Nashville, Tennessee.

Khatiwada was an employee of Bridgestone from April 2016 until April 2024. According to the complaint, Khatiwada's job progressed from his starting position as Director of Treasury Operations and Cash Management to Director, Cash Management, Treasury Consulting and M&A and, at the time of his separation from Bridgestone, Khatiwada was Assistant Treasurer, Capital Planning and Funding. Khatiwada allegedly was responsible for managing banking relationships with the banks that provided credit card processing services at each of the retail Bridgestone locations across the United States. He is accused of creating fraudulent monthly invoices to

---

[3] The following factual statements are taken from the complaint, as redacted, and are allegations only, which are recited solely for purposes of consideration of the government's motion for a detention hearing and for detention of Khatiwada pending trial.

Bridgestone for bank credit card fees or other service charges using a fictitious vendor, Paymt-Tech, LLC, which is similar in name to a legitimate payment processing vendor owned by J.P. Morgan Chase Bank called Paymentech. Purportedly because of the name similarity, the invoices were approved for payment. Following Khatiwada's departure, Bridgestone began an internal investigation of the significant decrease in monthly bank fees and discovered that the invoicing vendor, Paymt-Tech, is not associated with Chase Bank and that Chase Paymentech never sent invoices to Bridgestone for bank fees because the fees occur at the point of sale.[4]

The complaint further alleges that the funds from payments made by Bridgestone into Paymt-Tech accounts were then transferred into other accounts in the name of Khatiwada or his spouse or into joint accounts.[5] The government subsequently obtained forfeiture warrants for various bank accounts into which the proceeds of Khatiwada's allegedly fraudulent scheme were transferred.[6]

At the detention hearing held on November 15, the government presented testimony from Special Agent Wright, who adopted the statements in the complaint and testified about her interview with Khatiwada's wife and the government's efforts to locate and seize the funds allegedly obtained fraudulently by Khatiwada. Admitted as the government's exhibits were: a flow chart of deposits into Paymt-Tech accounts at Bank of America and Truist Bank and transfers out to (eventually) Fidelity Investment accounts in the name of Khatiwada, his spouse, or joint; a flow

---

[4] According to the complaint, an email from Khatiwada in April 2024 for payment of a Paymt-Tech invoice for "March Fees" stated: "Per my discussion … earlier this week, this will be the last invoice (will be debited at transaction level going forward)." (Docket No. 7 at ¶ 22.)

[5] As described below, the government introduced two exhibits illustrating the flow of funds.

[6] As described below, the government introduced exhibits consisting of the sworn statement in support of the forfeiture warrants and information received from various financial institutions in response to the forfeiture warrants.

chart of deposits into Paymt-Tech accounts at Bank of America and Truist Bank and transfers out to (eventually) Capital One accounts in Khatiwada's name; Special Agent Wright's sworn statement in support of forfeiture warrants; Capital One response to forfeiture warrant; Fidelity Investments response to forfeiture warrant; and, Khatiwada's Nepalese passport.[7] Khatiwada did not present any testimony, but did introduce a transcript of a custodial telephone call between he and his spouse following his arrest, which was admitted as an exhibit.

Finally, among the evidence presented was each party's proffer of whether and to what extent Khatiwada's naturalized U.S. citizenship impacts his Nepali citizenship. However, these proffers were diametrically opposed. The government proffered that, according to the U.S. Office of International Affairs (the "OIA"), the United States has no extradition treaty with Nepal and will not return a Nepali citizen to the United States for extradition purposes. In contrast, Khatiwada proffered that, when he became a naturalized U.S. citizen, he forfeited or lost his Nepali citizenship. In response to these contradicting proffers, the Court ordered the parties to submit briefing and any additional evidence on the issues of whether Khatiwada is or may remain a citizen of Nepal (including through restoration of citizenship) despite his naturalized U.S. citizenship. (Docket No. 14.) The Court took all issues regarding detention under advisement pending the parties' additional submissions.

In compliance with the Court's order, both parties filed supplemental briefings. (Docket Nos. 16 and 17.) The government and Khatiwada agree that Nepal does not recognize dual citizenship and that Khatiwada lost his Nepali citizenship when he was naturalized as a U.S. citizen. However, the parties disagree over whether Khatiwada could reacquire Nepali citizenship

---

[7] There is no dispute that the defendant is a naturalized United States citizen.

4

and what impact that might have, if any, on Nepal's extradition of Khatiwada back to the U.S. were he to attempt to relocate to Nepal.

In its briefing, the government reiterates its position that detention is appropriate based on Khatiwada's ties to Nepal. (Docket No. 17.) Essentially, the government argues that it would be fairly simple for Khatiwada to reinstate his Nepali citizenship if he were to return to Nepal. According to the government, Khatiwada has not informed Nepal that he is a U.S. citizen, which he should have done. (*Id.* at 2.) The government further contends that, even if Khatiwada renounces his U.S. citizenship by providing Nepal with a "certified United States Certificate of Renunciation of Nationality," he could reinstate his Nepali citizenship. (*Id.* at 2–3.) The government also suggests that Khatiwada could acquire Nepali citizenship by purchasing land or other property in Nepal. (*Id.* at 3–4.)

The government relies on several third-party sources to support its position in favor of detention. (Docket Nos. 16-1 to 16-8.) First, the government refers to information provided by the OIA and the Resident Legal Advisor in Nepal, but the government does not provide affidavits or other direct evidence from these sources. In addition, the government relies on news articles regarding potential amendments to Nepali laws that might impact the ability to regain citizenship and regarding certain Nepali citizens who have gained and then renounced their U.S. citizenship. The government's post-hearing filing also cites to caselaw it contends compels a determination that Khatiwada is a flight risk.

In his briefing, Khatiwada argues that he is not a Nepali citizen and could not easily regain his Nepali citizenship and therefore the government's arguments for his detention as a flight risk are unsupported. (Docket No. 17.) Khatiwada cites to the language of the Nepal Citizenship Act and the declarations of two lawyers admitted to practice in Nepal who are familiar with Nepali

citizenship law to support his contention that he is not a Nepali citizen. (*Id.* at 3 and Docket Nos. 17-1, 17-2.) Khatiwada also offers the Nepali lawyers' declarations to show that a renunciation of his Nepali citizenship or lack thereof would have no legal effect on the termination of his Nepali citizenship. (*Id.* at 3–4 and Docket Nos. 17-1, 17-2). Khatiwada further relies on a sworn declaration of his attorney confirming that, even though doing so has no legal effect, Khatiwada has formally renounced his Nepali citizenship. (*Id.* at 4 and Docket No. 17-4.) In addition, Khatiwada states that he cannot easily restore his Nepali citizenship because the U.S. would have to consent to a renunciation of his citizenship, which it could choose not to do, and because Nepal is not likely to grant citizenship to someone facing a criminal proceeding. (*Id.* at 4.) Khatiwada relies again on the declarations of the two Nepali lawyers to support these positions. (*Id.* and Docket Nos. 17-1, 17-2.) Khatiwada contends that the government has generally failed to establish that he is a flight risk for purposes of detention. (*Id.* at 5–8.)

Khatiwada's arguments include that the government failed to cite any other persuasive factors to show that he is a flight risk, including that he and his wife did not discuss his leaving the country during a recorded call, that he was arrested at an airport but was traveling domestically in the U.S., that the bulk of his assets have been seized, and that his counsel has made the rest of his financial statements known to the government. (*Id.* at 8.) For all these reasons, Khatiwada asks the Court to deny the government's motion for detention.

Having reviewed all the parties' evidence, including post-hearing submissions, and considered the parties' arguments regarding the issue of the detention and the Pretrial Services report recommendation release, the Court makes the following findings of fact and conclusions of law.

## II.     APPLICABLE PROVISIONS OF THE BAIL REFORM ACT

Under the Bail Reform Act, 18 U.S.C. §§ 3142 *et seq*., a court can order pretrial detention only after a hearing and only in certain eligible cases or circumstances. 18 U.S.C. § 3142(f); *see also United States v. Salerno*, 481 U.S. 739 (1987) (upholding Bail Reform Act) and *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441, at *2-12 (M.D. Tenn. May 27, 2021) (Richardson, D.J.) (exhaustive discussion of two-step process under Bail Reform Act). The Bail Reform Act charts four outcomes mandating that the court "shall issue an order that, pending trial," the defendant be: (1) released on their own recognizance; (2) released on conditions; (3) temporarily detained for purposes not at issue here; or, (4) detained until trial, if the court finds, after a hearing, that "no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of others. 18 U.S.C. §§ 3142(a), (e)(1).

"The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). "To balance a defendant's fundamental interest in pretrial liberty with adequate protection of the community and integrity of the judicial process, Congress authorized detention hearings only in limited circumstances." *United States v. Figueroa-Alvarez*, 681 F.Supp.3d 1131, 1134-35 (D. Idaho 2023) (internal citation omitted).

Those limited circumstances include five categories of serious crimes, as described in § 3142(f)(1), or when the defendant presents either a serious risk of flight or a serious risk of obstruction or intimidation, under § 3142(f)(2), acts that pose the greatest peril to the integrity of the judicial process. The government must establish by a preponderance of the evidence that one of these circumstances exists. *White*, 2021 WL 2155441, at *8. A preponderance of the evidence

means "such evidence as, when considered and compared with that opposed to it, has more convincing force and produces [a] belief that what is sought to be proved is more likely true than not true." *Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 446 (6th Cir. 2005). "[T]he [c]ourt's decision concerning whether to hold a detention hearing is based on even less information than a decision to detain or release a defendant." *United States v. DeGrave*, 539 F.Supp.3d 184, 198 (D. D.C. 2021) (internal citations omitted) (cleaned up).

The court can make the determination as to whether the case involves one of the enumerated bases for a detention hearing either before the detention hearing or at the detention hearing. *White*, 2021 WL 2155441, at *11. Further, the "ability of conditions of release to mitigate the risk of non-appearance is necessarily considered at step two (if it is reached), but it should not be considered at step one." *Id*. at *12. Absent a showing of one or more of the requisite circumstances authorizing a detention hearing, the defendant must be released, subject to appropriate conditions. *Id*. at *5.

Evidence rules (other than privilege) do not apply in the detention hearing context. 18 U.S.C. § 3142(f); *see also* Fed. R. Evid. 1101(d)(3). The key is simply evidentiary reliability and accuracy. *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. 1998). Given this hearing informality, the court properly considers a wide range of proof, the nature and quality of which, though, impacts its probative value and ultimate weight in the detention calculus.

The plain language of the Bail Reform Act permits the defendant to proffer evidence in connection with a detention hearing. 18 U.S.C. § 3142(f). Although the statute neither expressly permits nor prohibits proffers by the government, such proffers are the generally accepted practice. *See e.g. Salerno*, 481 U.S. at 743 (discussing government's proffered evidence); *United States v.*

8

*Tawfik*, 852 F. App'x. 965, 966-67 (6th Cir. 2021) (holding that detention was warranted based on government's proffered evidence); *United States v. Caldwell*, CASE NO. 1:24-cr-70, 2024 WL 2080985, at \*1-2 (N.D. Ohio, May 9, 2024) (discussion of evidence proffered by government); *United States v. Foster*, No. 3:23-CR-36-TAV-DCP-6, 2023 WL 4355331, at \*1 (E.D. Tenn. July 5, 2023) (discussion of evidence proffered by government); *United States v. Baldinger*, No. 3:85-0031, 1985 WL 2043, at \* n.2 (M.D. Tenn. May 8, 1985) (acknowledging that government may proffer evidence at a detention hearing).

If the court is satisfied that the government has sustained its burden of showing a supported basis for a detention hearing, the court then proceeds to consider the factors detailed in § 3142(g) to determine whether the defendant should be released on conditions or detained pending trial, with the analysis focused on "whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C § 3142(g)(1)–(4). Also included is whether the defendant was on probation or parole at the time he committed the alleged offense. 18 U.S.C. § 3142(g)(3)(B).

The court has broad discretion to determine how much weight to assign the factors listed in § 3142(g) based on the circumstances of a particular case. As the Second Circuit has explained:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant ... That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary

9

depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4th 141, 149-50 (2nd Cir. 2022).

With these principles in mind, the Court turns to the issues in this case. For the reasons discussed below, the Court finds that this is a case in which a detention hearing is warranted.[8] Upon consideration of the factors enumerated in § 3142(g), the Court finds that there are conditions of release that can be imposed to reasonably assure Khatiwada's appearance as required and he is therefore subject to release, provided he is able and willing to comply with conditions detailed in a separate order, which are the least restrictive conditions necessary to reasonably assure his appearance.

## III.    ANALYSIS

### A.    Does the case involve a serious risk of flight within the meaning of § 3142(f)(2)(A)?

Although neither party directly addressed this question either at the November 15 hearing or in their post-hearing submissions, the government's original motion was properly presented as a motion for a detention hearing and for detention. (Docket No. 11.) Khatiwada did not specifically challenge the government's right to a detention hearing, and therefore arguably waived or forfeited any objection on that basis. *White*, 2021 WL 2155441, at *6. Accordingly, the Court may proceed straight to the question of whether any risk of non-appearance may be adequately mitigated by one or more conditions of release. Nevertheless, should there be any question about whether this case involves a serious risk of flight for purposes of § 3142(f)(2)(A), the Court answers that question in the affirmative.

---

[8] As discussed in more detail below, neither party directly addressed this threshold question.

The offenses of which Khatiwada is charged here are not any of the categorical crimes for which a detention hearing is authorized under § 3142(f)(1). For that reason, the government is entitled to a detention hearing only if it can establish that Khatiwada poses a serious risk of flight or a serious risk of obstruction or intimidation under § 3142(f)(2). Recognizing this limitation, the government relies on § 3142(f)(2)(A), namely, that Khatiwada presents a serious risk of flight, as the sole basis for seeking a detention hearing. (Docket No. 11.) This question turns on what is meant by a "serious risk of flight."

As Judge Richardson explained in detail in *White*, what constitutes a "serious risk of flight" for purposes of § 3142(f)(2)(A) is one that requires some precision of thought. *White*, 2021 WL 2155441, at *4-12. Under Judge Richardson's construction of the statute, if Congress had intended "serious risk of flight" to be used interchangeably with a risk of non-appearance that cannot be remediated by conditions of release under § 3142(g), it would have used the same language in both parts of the statute, which it did not. *Id*. at *6-11. *See also United States v. Cobix-Espinoza*, 655 F.Supp.3d 584, 587-94 (E.D. Ky. 2023) (collection of cases). *But see Figueroa-Alvarez*, 681 F.Supp.3d at 1137-39 (different discussion of factors to consider in evaluating whether a defendant presents a serious risk of flight under § 3142(f)(2)(A)).

Judge Richardson contrasted a "serious risk of flight" with a risk of non-appearance, the latter of which must be adequately mitigated by conditions of release under 18 U.S.C. § 3142(c) and (e). Put another way, "serious risk of flight" is what allows the government to move for detention and risk of non-appearance is taken into consideration only if a detention hearing goes forward. The Court finds that a detention hearing is appropriate in this case because the government has shown by a preponderance of the evidence that the case presents a serious risk of flight under § 3142(f)(2)(A).

11

Khatiwada was born in Nepal but is a naturalized citizen of the United States. There is no dispute that the United States does not have an extradition treaty with Nepal. However, as set forth above, there is a dispute as to whether Khatiwada's naturalized U.S. citizenship impacts his Nepali citizenship. And the extent of any potential impact is similarly unclear.

Although there is, as discussed in more detail below, more clarity to the question of whether Khatiwada may find refuge in Nepal without the prospect of extradition if he were to travel there prior to his trial, there is no definitive answer. Khatiwada has traveled extensively to other countries over the past several years and several times internationally in 2024. He also appears to have means to fund such any flight; perhaps in funds unaccounted for in the government's calculation of the proceeds of Khatiwada's alleged scheme and more certainly in the value of the residential property that he owns jointly with this spouse.

For these reasons, the Court finds that the government has shown by a preponderance of evidence that this case involves a serious risk that Khatiwada will intentionally avoid appearing in court as required. A detention hearing may therefore proceed. *See e.g. United States v. Anming Hu*, No. 3:20-CR-21, 2020 WL 1076039, at *4-5 (E.D. Tenn. March 6, 2020).

**B.  Are there conditions of release that will reasonably assure the appearance of the defendant and the safety of the community?**

Satisfied that a detention hearing is appropriate, the Court must next determine whether pretrial detention is warranted. Specifically, Khatiwada may be detained pending trial only if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant]." 18 U.S.C. § 3142(e)(1).[9]  To make this decision, the Court must consider the following factors: (1) the nature and circumstances of the offenses charged; (2) the weight of the

---

[9] The government does not assert that the defendant is a danger to any other person or to the community.

12

evidence of likelihood of Khatiwada's non-appearance; (3) Khatiwada's history and characteristics; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by Khatiwada's release. 18 U.S.C. § 3142(g)(1)–(4). *See e.g. Cobix-Espinoza*, 655 F.Supp.3d at 589-94. The government must carry its burden by a preponderance of the evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

As detailed below, upon consideration of the totality of the circumstances, the weight of the factors set forth in § 3142(g) compels Khatiwada's release, but upon certain conditions.

### 1.    <u>Nature and circumstances of offense</u>

The first consideration for the Court is the nature and circumstances of the offenses charged. The criminal complaint charges Khatiwada with wire fraud in violation of 18 U.S.C. § 1343 and money laundering in violation of 18 U.S.C. § 1957. According to the government, the defendant concocted and conducted a scheme to defraud his employer, Bridgestone, in which he allegedly submitted fraudulent invoices totaling approximately $15 million to Bridgestone for payment to a fictitious vendor. The government alleges that Bridgestone made payments to the fictitious vendor's accounts, but the money was then transferred, in large part, into two accounts owned by Khatiwada's wife and then into one account owned jointly by Khatiwada and his wife. The government also alleges that a smaller portion of the money was transferred from the joint account into an account owned solely by Khatiwada.

Although the charged offenses do not involve any of the crimes set forth in § 3142(g)(1), the charges nevertheless implicate large loss amounts to-date of nearly $15 million dollars, which is, indeed, serious. Moreover, Khatiwada is alleged to be the principal figure in this long-running scheme and responsible for the artifice, rather than a mere participant. The alleged means of

commission of the offenses of which Khatiwada is accused include his alleged creation of fraudulent invoices and the establishment of a fake company.

Further, if convicted, Khatiwada will face a lengthy sentence or large fine. For the wire fraud offense, the potential range of penalty is twenty years imprisonment and a fine of $250,000. For money laundering offense, the potential range of penalty is ten years imprisonment and a fine of $250,000 or twice the amount of criminally derived property. These lengthy sentences provide the defendant with a motivation to flee internationally. *See Anming Hu*, 2020 WL 1076039 at *5 (citing *United States v. Xiaorong You*, No. 2:19-cr-14, 2019 WL 2426659, at *3 (E.D. Tenn. June 10, 2019) ("Defendant's lengthy sentence provides a motive to flee internationally.")).

Overall, the Court finds that the nature and circumstances of the charged offenses weigh in favor of detention.

### 2.  <u>Weight of evidence</u>

The weight of the evidence is not of Khatiwada's guilt, but, rather, the likelihood that he will not appear as required. *Stone*, 608 F.3d at 948. In weighing the strength of the evidence, the Court may not modify or limit the presumption of innocence. 18 U.S.C. § 3142(j).

According to Special Agent Wright, Khatiwada has extensive ties with Nepal, where he was born. He has traveled there frequently and according to his spouse has investments in Nepal. The Court cannot ignore Khatiwada's continuing ties to his country of origin, including potential access to funds that may be located outside the reach of the United States, which raises concerns about his likelihood of non-appearance in this case. However, the Court has not been presented with evidence to indicate that Khatiwada's ties to Nepal have a substantial connection with the offenses alleged. For example, the government provided no specific evidence to show that Khatiwada maintains bank accounts in Nepal or that any money from the alleged fraudulent

14

scheme was transferred to a bank account in Nepal or elsewhere abroad.[10] Rather, the evidence presented indicates that most of the funds were transferred to financial institutions or investment accounts located in the United States. Further, there is no evidence that Khatiwada has any professional affiliation with any public or private entities in Nepal. For example, there is no evidence that he is an employee or affiliate of a company in Nepal or the government of Nepal.

Nor is there preponderating evidence for purposes of § 3142(g) that Khatiwada could relocate to Nepal to avoid prosecution. Although there is no dispute that Nepal has no extradition treaty with the United States, Khatiwada provided sworn declarations of two Nepali lawyers, Khagendra Gharti-Chhetry and Ramesh Niraula, who both agree that, under Nepali law, Khatiwada automatically lost his Nepali citizenship when he became a naturalized U.S. citizen. (Docket Nos. 17-1 and 17-2.) The attorneys further agree that Khatiwada may now travel to Nepal only with a U.S. passport. (*Id*.) Gharti-Chhetry states that it is impossible for Khatiwada to restore his Nepali citizenship or obtain Non-Resident Nepali status without first showing his U.S. passport and that, to attempt restoration of his Nepali citizenship, Khatiwada must enter Nepal with a valid U.S. passport and provide proof that he surrendered his U.S. citizenship and passport to the United States consular office or the government. (Docket No. 17-1.) Niraula concurs that Khatiwada may only enter Nepal with a valid U.S. passport and additionally states that this criminal proceeding will likely prevent Khatiwada from obtaining the necessary tourist visa or restoring his Nepali citizenship. (Docket No. 17-2.).

In contrast, the government refers to several third-party sources to support its position in favor of detention, (Docket Nos. 16-1 to 16-8), but does not provide affidavits or other direct

---

[10] The government presented the general testimony of statements attributed to Khatiwada's wife that he has investments in Nepal.

evidence from those sources. In addition, the government relies on news articles reporting on various Nepali citizenship stories. While the Court finds these sources to be informative – and will treat them as proffers by the government – they each support only a supposition that Khatiwada would be able to remain in Nepal without extradition if he were to travel there. The sources do not, however, provide compelling, reliable evidence of such a conclusion, even under the informal evidentiary standards for detention hearings.

The government relies on three cases to support its position that Khatiwada is a flight risk: *United States v. Yu Zhou*, No. 2:19-CR-163(1), 2020 WL 1643634 (S.D. Ohio Apr. 2, 2020)*United States v. Kachkar*, 701 F. App'x 744, 747 (11th Cir. 2017); *United States v. Maxwell*, 527 F. Supp. 3d 659, 665 (S.D.N.Y. 2021). (Docket No. 16 at 5-6.)  The Court finds that the underlying facts here are distinguishable from those in the cases cited by the government and therefore substantially diminish the persuasiveness of those decisions.

In *United States v. Yu Zhou*, *supra*, the court denied the defendant's motion to revoke her detention order. The government points to the fact that the defendant in *Yu Zhou* had a history of consistent and lengthy travel to her home country of China, which, like Nepal, does not have an extradition treaty with the U.S.  2020 WL 1643634 at *6). The government analogizes that situation with Khatiwada's situation. However, the defendant in *Yu Zhou* did not have direct ties to her community in the U.S. and was alleged to have committed a crime connected to China. Neither of those facts are present here.

In *Kachkar*, the defendant was not a U.S. citizen, "virtually all of the over $100 million in fraudulent funds that Kachkar received were unaccounted for, with a significant portion of those funds having gone to foreign bank accounts," and when Kachkar was arrested, law enforcement found bank cards from Russian banks. 701 F. App'x. at 745 (cleaned up).  In *Maxwell*, the

16

presumption of detention applied based on the offenses of which the defendant was accused, namely sex trafficking of minors. 527 F.Supp.3d at 663. In addition, Maxwell's substantial resources and identifiable international familial and personal connections, her lack of candor regarding her family ties and assets, and her experience evading detection all supported detention. *Id*. at 663-64.

Here, although the charges also involve financial fraud and Khatiwada has a history of travel abroad and connections in Nepal, the similarity of circumstances essentially ends there. Khatiwada's international travel and ties do not compare to the defendants' extensive travels and foreign ties described in the *Kachkar* and *Maxwell* decisions. As discussed above, Khatiwada is a naturalized U.S. citizen. Additionally, the declaration of Khatiwada's wife attests to his substantial ties to this district. (Docket No. 17-3.)

Khatiwada's circumstances are more akin to those of the defendants in the two cases upon which he relies in opposing detention, both of which are from sister courts in the Sixth Circuit: *United States v. Anming Hu*, *supra*, and *United States v. Rashid*, No. 17-20465, 2017 WL 3334035 (E.D. Mich. Aug. 4, 2017). In both cases, the courts denied the government's motions for detention even though the defendants had ties to other countries without extradition treaties. Despite those defendants' financial resources and family connections to foreign countries, the courts found their ties to the U.S. to be compelling.[11]

Among the circumstances that mitigate the likelihood that Khatiwada will not appear as required are that he has immediate family ties to the Middle District of Tennessee, specifically his

---

[11] In comparing the caselaw cited by the parties to the instant facts, the Court nevertheless notes that, while cases applying the standards of the Bail Reform Act are helpful guidance, the decision of whether to release or detain a defendant is a case-by-case one and the decision depends on the specific circumstances of each case. *United States v. Sanders*, 466 F.Supp.3d 779, 787 (E.D. Mich. 2020).

17

wife and two young children. He also owns a home here, and according to the declaration of his wife, is an active member of the community in Tennessee, and has lived in the U.S. for more than twenty years and in Tennessee for eight years. (Docket No. 17-3). Additionally, although perhaps of less importance, the forfeiture efforts initiated by the government have resulted in identification and accounting of substantial funds, in excess of $17 million in potentially forfeitable assets.[12]

For all these reasons, the Court finds that the weight of the evidence of Khatiwada's likelihood of non-appearance favors release.

### 3.     History and characteristics

The history and characteristics of a defendant within the meaning of the statute include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Also included is whether the defendant was on probation or parole at the time he committed the offense. 18 U.S.C. § 3142(g)(3)(B).

The Court notes that Khatiwada, who appears to be middle aged, was born in Nepal, but has been in the Nashville area for at least eight years, or since 2016, when he was first employed by Bridgestone, and has resided in the United States for more than 20 years. Khatiwada is now a naturalized citizen of the United States. He is married and has two young children, with all of whom he resides in the Nashville area. He is a coach of a youth soccer team in the Nashville area. Other evidence was presented that Khatiwada has family in the county of Nepal, and, according to

---

[12] As discussed below, the full picture of the recoverable assets is not yet detailed.

an interview with his wife, has investments there, although no more detail of any such investments was provided.

As for his financial resources, Khatiwada is alleged to have benefited from his fraudulent activities by nearly $15 million. Special Agent Wright testified that the government was able to identify and seize more than $17 million from the defendant's accounts, which means that Khatiwada no longer has possession of those funds. The government contends that there are substantial additional funds that remain unaccounted for. However, because the government's forfeiture investigation and efforts are in the earliest stages, the details of recoverable funds or other forfeitable assets are not yet fully developed. Khatiwada jointly owns a house with his wife, which appears to have a substantial worth and no known encumbrances.[13]

Neither party presented the Court with much detail of Khatiwada's physical and mental condition, employment, past conduct, history relating to drug or alcohol abuse, criminal history, or record concerning appearance at court proceedings. Most of that information was provided by Pretrial Services in preparation of their recommendation that Khatiwada be released on conditions.

According to the complaint, which Special Agent Wright adopted in her testimony, Khatiwada left his employment with Bridgestone in April of 2024. Whether he is currently employed is unknown. Additionally, there is no indication of any report by Khatiwada of physical or mental health issues or concerns and or of a history of substance abuse or substance abuse treatment. Khatiwada has no reported criminal history, which is not determinative, but moderates in favor of release. *See e.g. Stone*, 608 F.3d at 950 (internal citation omitted) (noting that a prior criminal record, which eases the government's burden, is not a requirement for ordering detention).

_____

[13] The Pretrial Services report indicates that a credit report does not reflect any liens in Khatiwada's name or judgments against him.

19

In short, there is at least some evidence that Khatiwada may have some financial resources to flee if he chose to do so and that he does not have the stability of a current job here. However, as discussed above, Khatiwada has significant family and community ties here and there is substantial doubt that he could return to and remain in Nepal, given his current status.

The Court does not find that any of these circumstances specifically, or when considered together, compel a determination that Khatiwada has the proclivity and incentive to flee rather than face prosecution of this case. Or at least that there are not conditions of release that could reasonably mitigate any such prospect of non-appearance. Ultimately, considering the totality of the circumstances, the Court finds that the defendant's history and characteristics, including as discussed above in connection with other § 3142(g) factors, weigh in favor of release.

### 4. Nature and seriousness of danger upon release

Lastly, the Court considers the potential danger that Defendant poses to any person or the community under 18 U.S.C. § 3142(g)(4). Here, the government does not allege that the defendant poses a danger. Moreover, this factor has little bearing in the Court's analysis as the requested detention is based upon the defendant's risk of flight. *See Anming Hu*, 2020 WL 1076039 at *7 (citing *United States v. Vo*, 978 F. Supp. 2d 41, 46 (D.D.C. 2013) (finding that where detention is based on risk of flight, "[t]his factor … has little bearing")). This factor is therefore essentially neutral at worst and at best weighs in favor of release.

Upon review of the evidence and taking all these factors into consideration, the Court finds the government failed to meet its burden of showing a properly supported basis for detention on grounds that Khatiwada is likely not to appear. Rather, the Court finds that it can impose conditions of release to reasonably assure Khatiwada's appearance. Ultimately, conditions of release are not intended to ensure a defendant's appearance, but rather serve to reasonably mitigate the risk of

non-appearance. Those conditions of release, and the procedures for finalizing Khatiwada's release, are provided for in an order entered separately.

## IV.     CONCLUSION

For the reasons detailed above, the government's motion for detention (Docket No. 11) is **DENIED**.  The Court will conduct a separate hearing to set conditions of release once Khatiwada has satisfied the predicate conditions to his release as described by separate order.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

21